**CORBETT INVESTMENT CO. v. HELVER-ING, Commissioner of Internal Revenue.**

**No. 6218.**

United States Court of Appeals for the District of Columbia.

Argued Dec. 4, 1934.

Decided Jan. 7, 1935.

W. W. Spalding, of Washington, D. C., and Herbert L. Swett, of Portland, Or., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Robert H. Jackson, William E. Davis, and J. Louis Monarch, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Petitioner is an Oregon corporation. In 1903 Henry W. Corbett, a resident of Portland, Or., died testate leaving surviving him a widow and three grandsons. His will bequeathed to the widow $150,000 in cash, the use, tax free, of certain parcels of real estate, and the annual sum of $12,000 for her natural life, to be paid monthly out of the "income and rents" from the testator's real property. These provisions for the widow were in lieu of dower. The will bequeathed and devised to the three grand-

sons, subject to the charge upon the rents from the real estate, all the rest, residue, and remainder of the estate. The appraised value of the real estate was $1,230,750. The rentals exceeded $100,000 annually.

After the death of Corbett, his widow received each year the $12,000 provided for her until 1912, when, it having been found burdensome and inconvenient to keep open the estate and continue the activities of the executors, she consented that the estate might be closed, and informed the probate court by petition of her willingness to release the estate and to accept the personal undertaking of the three grandsons for the continued payment of the $1,000 per month bequeathed to her in the will. The language of the agreement is, "We, Henry L. Corbett, Elliott R. Corbett, and Hamilton F. Corbett, our heirs, executors, and assigns, hereby agree that we will jointly during the term of your natural life pay to you the sum of one thousand dollars ($1,000) monthly," and the probate court, in confirming the agreement, decreed that the widow having "for the purpose of facilitating the settlement and distribution of said estate accepted the personal obligation of the residuary legatees and devisees under said will for the payment to be made to her during the term of her natural life as provided in and by item 3 thereof and has discharged said executors—* * * it is now here ordered, adjudged and decreed that said executrix and executors forthwith assign, transfer, distribute, and turn over to them, the said Henry Ladd Corbett, Elliott Ruggles Corbett, and Hamilton Forbush Corbett, as residuary legatees under said will of Henry W. Corbett, deceased, all and singular the assets, real and personal, choses in action and property of whatever description now in their possession or under their control, being the entire residue of the estate and property of which he, the said Henry W. Corbett died, seized, to be held, owned, used, and enjoyed by them in their own right. * * *"

The arrangement so made was carried out by the grandsons until the year 1926, when petitioner was organized. In that year the grandsons transferred their inherited real estate to petitioner, and as a consideration therefor petitioner issued all of its capital stock to the three transferors and assumed their liabilities respecting the $1,000 per month payment to the widow. No other persons have held any of petitioner's capital stock, and the three grandsons

have been in full control of the corporation at all times. Pursuant to agreement, petitioner paid to the widow $4,000 during the last four months of 1925, and has paid her $1,000 per month since then. In its income tax returns for the taxable years (1926, 1927, 1929) petitioner claimed as deductions the amounts so paid. The Commissioner disallowed the deductions, and petitioner appealed to the Board of Tax Appeals. The Board sustained the Commissioner's determination, saying: "Manifestly, those monthly payments were in fulfillment of a contractual obligation resting upon the petitioner. In making them the petitioner was not acting as a mere conduit for the transmission, under testamentary provisions, of part of the income from an estate, for that estate had been closed and the will superseded many years before petitioner was created. Clearly, the payments now in question were part of the purchase price which petitioner paid for the property it had acquired. They should therefore be considered capital items, and as such are not deductible in computing net taxable income."

On appeal to this court, two questions are presented; first, whether petitioner is entitled to deduction from its gross income of the sum paid by it monthly to the widow; second, whether each of the monthly payments represented in part a capital expenditure and in part interest. The applicable statutes are the Revenue Acts of 1926, §§ 213, 214 (26 USCA §§ 954, 955) and 1928, §§ 22, 23 (26 USCA §§ 2022, 2023), that is to say, the paragraphs defining gross income and the deductions therefrom. Briefly stated, petitioner's position is that the provision in the will for the benefit of the widow created a charge upon the rents and profits of the real estate, and this charge was not waived or destroyed by the agreement between the widow and the grandsons, nor was the charge destroyed by the conveyance of the real estate to petitioner. In this view, petitioner contends that the income received by it from the real estate was received subject to the charge originally made against it in the will, and was therefore not taxable income to it. We are unable to agree either in petitioner's premise or its conclusion. It is undoubtedly true that the monthly payment to the widow was secured by a charge upon the rents from the real property owned by the elder Corbett at the time of his death, and it is equally true that until that charge was

waived or released, the payments to the widow were not income taxable to the executors of the estate. And this is true because the revenue statutes do not undertake to tax the person who receives income where he receives it wholly as an instrumentality or agency for delivery to another. But in the view we take of this case, the conditions we have just described ended in 1912. In that year the widow agreed on her part to release both the estate and the executors from any and all claims she had on account of the provisions in the will in her favor, and the grandsons, as residuary devisees, agreed jointly to pay her a sum of $1,000 monthly. This release of her equitable lien by the widow was declared by decree of the probate court to discharge and extinguish the right created in her favor through her husband's will, to receive monthly the sum of $1,000 from and out of the rents from the real property. Unless, therefore, we can find in the agreement and in the subsequent court proceedings something to manifest a different or contrary intent, it follows we must give it that effect.

On the contrary, we think there is no doubt that all the parties to the agreement intended to extinguish any and every lien held by the widow on the property of the estate and to substitute the unsecured promise in its stead, and if this is true the transaction between the widow and the grandsons, and equally the transaction between the latter and the petitioner, was one in the nature of purchase, for by the discharge of the lien they acquired a full right in property in which formerly they had only a qualified right; and if this is true the price they paid was, as the Board said, a capital investment. In this case, from the time of the transfer of the real estate to petitioner from the grandsons, petitioner received all the rents in its own right and, so far as we are told by anything in the record, it had the right and the power to use them without accountability to the widow or any one else, and the widow's only right was to demand and receive from petitioner a thousand dollars monthly, regardless of the source from which it came. The payments to her, therefore, were clearly taxable to petitioner, even though they were also taxable to her. This proposition seems to us too plain for argument; but see Scott v. Commissioner (C. C. A.) 29 F.(2d) 472; Mastin v. Commissioner (C. C. A.) 28 F.(2d) 748.

■ The second question presented is whether each of the monthly payments made to the widow represented in part a capital expenditure and in part interest or the satisfaction of a loss. Petitioner tells us that sound accounting suggests that the amount paid annually be discounted back to September 1, 1926, the date of the assumption of the payments by petitioner, and that only the discounted value on that date of the amount subsequently paid be regarded as a capital expenditure, the remainder being interest and therefore deductible. The correct method, we are told, in arriving at the amount of the liability, i. e., the promise to pay the monthly sums, at the time of its assumption, is to discount the indefinite number of payments to be made at a future date by the use of a reasonable interest rate just as an annuity writer may by a like formula deduct a portion of the annual payment made to the annuitant as interest accrued during the tax year. The cases to which we are referred do not, as we think, shed much light on the question we have to decide. In Warner v. Walsh (C. C. A.) 15 F.(2d) 367, it was held that a widow who relinquished her dower rights and elected to take under her husband's will occupied the position of the purchaser of an annuity, and that the payments to her were not subject to taxation until her total receipts from the estate amounted to the value of what she had relinquished, namely, the value of her statutory rights. In Helvering v. Butterworth, 290 U. S. 365, 54 S. Ct. 221, 78 L. Ed. 365, the Supreme Court declined to follow the annuity idea and held that payments so received by a widow were received in her capacity as a "beneficiary" within the intendment of the statute and that as such beneficiary she was taxable for all amounts received. In Commissioner v. John C. Moore Corp. (C. C. A.) 42 F.(2d) 186, a corporation obtained a conveyance of land and buildings in consideration of its payment to the grantor of $10,000 a year for life. The fair market value of the property on the day of the conveyance was $80,000, and on that date the grantor's expectancy was 17.4 years, and the value of a $10,000 annuity for that length of time was $106,173.96. The Board of Tax Appeals in that case adopted the theory of apportionment between capital and interest. The Court of Appeals in the Second Circuit, following the Board, held that the agreed annual payment consisted in part of principal and in part of interest, and that the amount deductible as interest

528

for each year was the difference between the sum of $10,000 and its discounted value as of the date of the agreement. The theory seems to have been that the difference between the cost, calculated on mortality tables showing an average life expectancy, and the estimated aggregate of the annual payments may properly be deemed interest, since such sum would represent the amount paid by the writer of an annuity for the use of the money between the date of purchase and the dates of the periodic payments. But we fail to see the relevancy of the rule applied in either case to the facts here.

Here, it is true, we have a widow who has elected to take under her husband's will in lieu of dower, but that election occurred nearly 20 years ago, and as of that time settled her rights against the estate. From thence on she was entitled to $12,000 a year, and she has never agreed to take less or bargained to get more. The value of the dower which she surrendered years before was not an element in the agreement we are concerned with; and its value could not now be used to calculate the value of the release, nor has the amount of the annual payment any relation to it. What the widow surrendered was not title to property, but the right to hold property in security

of payments due her during her lifetime. What the grandsons got was the discharge of an indeterminate equitable interest in property in which they owned the fee. The widow surrendered the lien in exchange for their personal obligation. The consideration to them was the release of the lien. The consideration to her, their obligation to pay the same sum notwithstanding the waiver and discharge. Therefore, to call any part of the payments made by them "interest" would be pure fiction, and to treat the agreement between the grandsons and the widow as the establishment of an annuity would be to indulge a form of reasoning we are wholly unable to follow. The kind of interest which the law permits to be deducted in ascertaining net income is, as the Supreme Court has said, that which is usually called interest by those who pay and those who receive the amount so denominated in bond and coupon, and it does not refer to some esoteric concept derived from subtle and theoretic analysis. Old Colony R. Co. v. Commissioner, 284 U. S. 561, 52 S. Ct. 211, 76 L. Ed. 484. To denominate as interest or loss any part of the annual payments involved here would require more than subtle and theoretic analysis.

Affirmed.