## HELVERING v. LOUIS.

### No. 6333.

United States Court of Appeals for the District of Columbia.

Argued Feb. 12, 1935.

Decided April 1, 1935.

Robert H. Jackson, Frank J. Wideman, Sewall Key, and Helen R. Carloss, all of Washington, D. C., for petitioner.

Theodore B. Benson, of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

A petition for the review of a decision of the United States Board of Tax Appeals granting the taxpayer a deduction from gross income for a loss which she claims to have sustained under sections 213 and 214, Revenue Act of 1926 (44 Stat. 9, 23, 26, 26 USCA §§ 954, 955).

A motion was made in this court to dismiss the petition upon a charge that it had not been filed within three months after the date of the final decision of the Board of Tax Appeals. It appears, however, that after the date of the decision petitions for rehearing were filed by the Commissioner with the Board which suspended the running of limitations applicable in such cases. This subject was considered by us in Helvering v. Continental Oil Company, 63 App. D. C. 5, 68 F.(2d) 750, certiorari denied 292 U. S. 627, 54 S. Ct. 629, 78 L. Ed. 1481, and conformably with our decision in that case the motion to dismiss the present petition is overruled. See Griffiths v. Commissioner (C. C. A.) 50 F.(2d) 782; Burnet v. Lexington Ice & Coal Co. (C. C. A.) 62 F.(2d) 906.

The facts are stipulated. It appears that the taxpayer's father, Leon Klein, died testate on December 28, 1912, survived by his widow, three daughters, and two sons. His will was duly admitted to probate on January 2, 1913. The testator left an estate valued at $2,868,442.39. By his will he left $75,000 to each of his daughters, and to his sons and his widow he left all of his stock in "L. Klein," a corporation valued at $1,-500,000, in equal shares. The residue of the estate was to go to the widow and the five children, one-sixth to each.

The present taxpayer, one of testator's daughters, and her sisters, were not satisfied with the distribution provided in the will, and on April 19, 1913, an agreement was entered into by all of the legatees for a different settlement of the testator's estate. It was provided by this agreement that the two brothers should have the stock in L. Klein Corporation, and that all cash, stocks, bonds, mortgages, and other evidences of indebtedness with earnings therefrom after testator's death should be divided between the three sisters, share and share alike. In addition, the two brothers agreed to pay each sister or her heirs, administrators, or assigns, the sum of $5,000 per annum payable in semiannual installments during the life of their mother, Rosalinda Klein. It was also provided by a separate trust agreement that the widow and the two sons should hold 200 shares of the stock of the "12th Street Store," a corporation, in trust to pay out of dividends therefrom the sum of $3,000 per year to each sis-

ter during the life of Rosalinda Klein, and after her death should pay all dividends to them share and share alike until March 3, 1929. The sisters also were given an option to purchase the 12th Street Store at its book value at any time prior to March 3, 1929.

In consideration of this agreement, each party thereto released the others and the executors from all claims arising in connection with the estate.

The life expectancy of Rosalinda Klein, the widow, on April 19, 1913, the date of the agreement, computed according to mortality tables, was 15 years, 1 month, and 9 days; and the value of an annuity of $5,000 per annum payable semiannually for such a period, similarly computed as of April 19, 1913, was stipulated to be $57,753.50.

Rosalinda Klein did not live out her expectancy, but died in the year 1925, three years prior to the end of her expectancy, and the annuity then expired. The taxpayer had received up to the time of her mother's death, semiannual payments aggregating $60,000, $2,500 of which was received in 1925.

It is stipulated that the $60,000 total payments received by the taxpayer under the annuity contract, if discounted back to April 19, 1913, would have a value as of that date of $48,568.94. It is apparent that if Rosalinda Klein had lived out her full expectancy, then the taxpayer would have received six additional semiannual payments of $2,500 each, or a total of $15,000, and it is stipulated that this amount would have had a capital value as of April 19, 1913, of $9,184.56.

█ Upon these facts the taxpayer in her return for the year 1925 claimed a deduction from gross income in the sum of $9,184.56, as the difference between the cost of the annuity on April 19, 1913, and its value upon that date in view of the subsequent premature death of Mrs. Klein.

The Commissioner of Internal Revenue denied this claim with the following comment:

"Your contention that a loss of $9,247.83 was sustained in the year 1925 from the termination of an annuity contract has been denied. This item represented the difference between $57,754.77, the stipulated value on April 19, 1913, of your right under contract to receive $5,000 a year during the life of your mother, and $48,506.94, the value of the total payments received.

"It is held by this office that inasmuch as your brothers did not agree to pay you a specific amount at the rate of $5,000 a year but merely agreed to pay an amount which was contingent upon the life of your mother, the termination of the contract did not result in a deductible loss but merely in the collection of a lesser amount than was anticipated, based on a theoretical computation."

The Commissioner accordingly found a deficiency in the taxpayer's return. The taxpayer then appealed to the Board of Tax Appeals and the Board held that the loss as claimed by her was allowable, and accordingly redetermined the deficiency found by the Commissioner. Thereupon the Commissioner filed the present petition for a review of the Board's decision.

We are of the opinion that the taxpayer suffered no deductible loss by reason of the facts as above stated. The contention of the taxpayer is founded upon the theory that on April 19, 1913, she purchased the annuity in question at a cost of $57,753.50. This price is purely theoretical and is obtained by an actuarial calculation of the value of an annuity of $5,000 a year upon the life of a person having an expectancy according to the mortality tables of 15 years, 1 month, and 9 days. The taxpayer claims that inasmuch as her mother died before the expiration of the period of expectancy, taxpayer thereby suffered a loss of $5,000 a year for three years amounting to $15,000, which if calculated back to April 19, 1913, would have a value of $9,184.56. The loss which she claims accordingly is the difference between the supposed cost of the annuity as of April 19, 1913, based upon her mother's expectancy of life, and the value of the annuity as of that date as determined by the actual period of her mother's life. These calculations are all theoretical. At the date of the annuity contract the taxpayer had no assurance from any source that her mother would live for the full period of her expectancy as calculated by the mortality tables. The taxpayer accepted the contract upon the basis of its terms which assured her of the payment of the annuity for the actual period of her mother's life and not for the period of her supposed expectancy of life. Had the contract stipulated for a payment of $5,000 a year for 15 years, 1 month, and 9 days, a default of payment for the last 3

years, 1 month, and 9 days of that period would have caused a loss computable upon a different basis than now obtains in this case. But the contract as executed was not for the payment of the annuity for a fixed term of years, but only for the period of her mother's life. Consequently, the calculated difference between the expected value of the annuity contract as of the time when executed and its actual value as afterwards determined, does not furnish a basis for the taxpayer's claim of a deductible loss.

■ Moreover, we think that the facts as stipulated show that the taxpayer suffered no capital loss by reason of the premature death of her mother. Section 213 (b) (2) of the Revenue Act of 1926, 26 USCA § 954 (b) (2), provides, in substance, that amounts received under an annuity contract shall be excluded from gross income until the aggregate amount received exceeds the aggregate consideration paid therefor, after which any further payments shall be included in gross income. Accordingly, the payments made to the taxpayer by her brothers during the lifetime of their mother constituted a return of the capital cost of the annuity and during that period were free from income tax. The taxpayer in fact received payment for more than the cost of the annuity to her on April 19, 1913. Had her mother lived to the full measure of her expectancy and had the taxpayer received additional payments, such payments, being in excess of the cost of the annuity on April 19, 1913, would have been returnable as income or gain. Inasmuch as the full cost of the annuity had already been paid to the taxpayer the loss of these expected gains was not a deductible loss. This view is sustained by the following rulings of the Bureau of Internal Revenue: I. T. 1484, I-2 C. B. 66; I. T. 1363, I-1 C. B. 79; I. T. 2162, IV-1 C. B. 29; S. M. 3434, IV-1 C. B. 29; I. T. 2397, VII-1 C. B. 90. Also by Continental Illinois Bank & Tr. Co. v. Blair (C. C. A.) 45 F.(2d) 345; Warner v. Walsh (C. C. A.) 15 F.(2d) 367; United States v. Bolster (C. C. A.) 26 F.(2d) 760, 59 A. L. R. 491; Allen v. Brandeis (C. C. A.) 29 F.(2d) 363; (overruled upon other grounds by Helvering v. Butterworth, 290 U. S. 365, 54 S. Ct. 221, 78 L. Ed. 365). Compare Commissioner of Internal Revenue v. John C. Moore Corporation (C. C. A.) 42 F.(2d) 186; Logan v. Commissioner (C. C. A.) 42 F.(2d) 193, affirmed in Burnet v. Logan, 283 U. S. 404, 51 S. Ct. 550, 75 L. Ed. 1143; Curtis v. Commissioner, 26 B. T. A. 1103 (decision promulgated prior to Helvering v. Butterworth, supra); Corbett Investment Co. v. Helvering, 64 App. D. C. 121, 75 F.(2d) 525. Contra Klein v. Commissioner (Weissenbach v. Commissioner), 6 B. T. A. 617.

Our interpretation as above set out is confirmed by the change in the statutes relating to annuities recommended by the Committee on Ways and Means, submitted to the 73d Congress, 2d session, on February 12, 1934, to accompany the revenue bill of 1934, being Report No. 704. In referring to section 22 (b) (2) of the reported bill, the Committee states as follows:

"Section 22 (b) (2). Annuities, etc.: The present law does not tax annuities arising under contracts until the annuitant has received an aggregate amount of payments equal to the total amount paid for the annuity. Payments to annuitants are, in fact, based upon mortality tables which purport to reflect a rate of return sufficient to enable the annuitant to recover his cost and in addition thereto a low rate of return on his investment. The change continues the policy of permitting the annuitant to recoup his original cost tax-free but requires him to include in his gross income a portion of the annual payments in an amount equal to 3 per cent of the cost of the annuity. While the percent used is arbitrary, it approximates the rate of return in the average annuity.

"Statistics show that an increasing amount of capital is going into the purchase of annuities, with the result that income taxes are postponed indefinitely. The change merely places the return of this form of investment on the same basis as other forms of investment by taxing that portion of each payment which in fact constitutes income."

The amendments thus recommended by the Committee were enacted by Congress in the Revenue Act of 1934, § 22 (b) (2), 26 USCA § 5022 (b) (2).

The decision of the Board of Tax Appeals therefore is reversed, and the cause is remanded to the Board for redetermination in accordance with the foregoing conclusions.