## GOWRAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5801.

Circuit Court of Appeals, Seventh Circuit.

Dec. 22, 1936.

Rehearing Denied Jan. 12, 1937.

126

A. L. Nash, of Manitowoc, Wis., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to the Atty. Gen., for respondent.

Will ·R. Gregg and Allin H. Pierce, both of New York City (Carter, Ledyard & Milburn, of New York City, of counsel), amici curiæ.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

Petitioner seeks a review of a decision of the Board of Tax Appeals approving respondent's assessment of a deficiency income tax against petitioner for the year 1929.

Throughout 1929 petitioner was a holder of common stock in the Hamilton Manufacturing Company. On July 1st of that year, the corporation declared a dividend on the common stock of $14 per share and paid the same by distribution of shares of the corporation's preferred stock, at the par value of $100 per share. As his dividend, petitioner received 533 shares. Previously he had held only common stock. At the time the dividend was declared the corporate earned surplus was $440,000, against which the total dividend, $261,531, representing 2,615 shares of preferred stock at $100, was charged.

Some three months after receiving the preferred stock, petitioner sold it to the corporation, at $100 per share. Petitioner, in filing his income tax return, apportioned a part of the cost of his common stock to the preferred, treating the cost of the common as the total cost of both, and paid a tax on this basis. The Commissioner assessed a deficiency tax, upon the premise that the completed transaction was essentially a cancellation or redemption of the preferred stock, equivalent to the distribution of a taxable dividend.

Petitioner filed his petition with the Board of Tax Appeals to set aside the Commissioner's determination. The Commissioner answered and, under date of June 29, 1933, a division of the Board promulgated a memorandum opinion in favor of petitioner and against respondent, holding that the transaction did not amount to cancellation or redemption.

On July 16, 1933, respondent filed with the Board his motions for, (1) reconsideration of the memorandum opinion; (2) review by the Board, as provided by section 906 (d) of the Revenue Act of 1924, as amended by section 1000 of the Revenue Act of 1926, 44 Stat. 106; and (3) judgment in favor of respondent. On July 24, 1933, respondent's motion for review was denied. On January 15, 1934, his motions for reconsideration of the memorandum opinion and for judgment were denied by Division 16. On January 26, 1934, respondent moved for review of the order denying respondent's motions for reconsideration and judgment, and five days later the Board granted the review. Still later, on November 20, 1934, it disapproved the former order and granted respondent's motion for reconsideration of the memorandum opinion of June 29, 1933.

On February 13, 1935, petitioner filed with the Board three motions: (1) That the order of the Board dated November 20, 1934, whereby the Board granted reconsideration of the memorandum opinion of June 29, 1933, be vacated; (2) that respondent's motion for such reconsideration be denied; and (3) that judgment be entered for petitioner in accordance with the prayer of his petition for redetermination. On June 27, 1935, the Board delivered another decision. The opinion of the majority did not overrule the conclusions reached June 29, 1933, wherein it was held that the preferred shares had not been redeemed in such manner as to make the transaction essentially equivalent to a taxable dividend, but held that the original distribution was not a tax-free stock dividend, but constituted taxable income, because of the fact that the issue of the shares resulted

in a change in the proportionate corporate interests of the stockholders. The Board at that time denied petitioner's three motions made on February 13, 1935.

On August 9, 1935, the Board entered the decision from which this appeal is taken, approving the deficiency of $5,831.67 in income tax for the year 1929.

The facts are not disputed. The only questions submitted are those of law.

■ It is contended that the Board was without jurisdiction to decide the case upon a point not urged by the Commissioner. The Board approved the Commissioner's assessment, but did so upon a legal theory different from his. We are of the opinion that the Board acted within its powers. It had a right to grant a rehearing. Washburn Wire Co. v. Commissioner (C.C.A. 1) 67 F.(2d) 658; Helvering v. Continental Oil Co., 63 App.D.C. 5, 68 F.(2d) 750; Griffiths v. Commissioner (C.C.A.) 50 F. (2d) 782; Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 313, 53 S.Ct. 150, 77 L.Ed. 325; Burnet v. Lexington Ice & Coal Co. (C.C.A. 4) 62 F.(2d) 906; Helvering v. Louis, 64 App.D.C. 263, 77 F.(2d) 386, 99 A.L.R. 620. There was no abuse of discretion in doing so, for the Board may uphold the Commissioner's decision for a reason different from that set up by the latter in his deficiency notice. This rule is particularly applicable where there is no dispute as to the facts. It is immaterial whether the Commissioner proceeded upon the wrong theory. The burden is upon petitioner to show that the assessment is wrong, upon any proper theory; otherwise he must fail. Crowell v. Commissioner (C.C.A. 6) 62 F.(2d) 51; Beaumont v. Helvering, 63 App.D.C. 387, 73 F.(2d) 110; J. & O. Altschul Tobacco Co. v. Commissioner (C.C.A. 5) 42 F.(2d) 609.

No injury accrued to petitioner in this respect, as the stipulation covered all facts, including a value of $100 per share for the preferred stock. Consequently, there was no surprise of or advantage over petitioner.

■ The next question confronting us is the character of the distribution. Since the decision of the Board the Supreme Court on May 18, 1936, decided Koshland v. Helvering Commissioner, 298 U.S. 441, 56 S. Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756, and there held that the issuance of common stock as a dividend upon preferred stock is a stock dividend which may be taxed; that, where a stock dividend gives the stockholder an interest different in character from that which his former holdings represented, he receives taxable income. In its previous holdings, Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, and Towne v. Eisner, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372, L.R.A.1918D, 254, the Supreme Court had said that a common stock dividend does not in any wise alter the interest of a common stockholder. In the Koshland decision the court pointed out that a different result occurs when a different kind of stock is issued as a dividend. The legal quality of what the taxpayer has after such distribution is different from that which he had before. Therefore the distribution is one of property rights of variant character from those which he previously owned, and as such, therefore, constitutes income which could be taxed. The court, however, did not decide whether Congress has in fact levied a tax upon such kind of stock dividend. That question is now presented.

The Revenue Act of 1928, c. 852, 45 Stat. 791, expressly provides that stock dividends shall not be subject to tax (section 115(f), 26 U.S.C.A. § 115(f) and note), and the regulations have at all times, since said date, provided that the issuance of its own stock by a corporation as a dividend does not result in taxable income. This statute was enacted by Congress and the regulations of the Department were promulgated after the Supreme Court decided that dividends of common stock to common stockholders do not constitute income. Since that decision, it has been the settled policy in legislation and administration to make no assessment against such distribution as income. Since the Koshland decision, however, it is clear that there are two kinds of stock dividends—those which result in no change of interest in the corporate property and those which result in a new sort of interest. The latter is income and may be taxed.

■ But we find in the act nothing which will justify us in reading into it any implied intent upon the part of Congress to limit the term "stock dividend." Rather, we believe that it had not previously occurred to Congress that there are two kinds of stock dividend, one taxable and one not. This is confirmed by the fact that in 1936 Congress amended the act so as to make

128

taxable such stock dividends as are taxable within the constitutional amendment. To say that Congress intended so to provide by prior legislation seems to us unjustified.

■ The situation then is this: A stockholder received in 1929 a stock dividend which might have been taxed if Congress had seen fit to do so. This Congress had not done. Consequently, petitioner received his preferred stock free of any tax. Upon its receipt, it became an asset of his estate. Thereafter, within the same year, he sold it. Consequently, he was bound to account for any profit realized in the sale. Such profit is taxed, and he must account for the same.

■ The material question is as to his cost basis for the determination of such profit. Petitioner urges that it is $100, the stipulated value at the time he received it. The government says it is zero.

We liken the receipt of the tax-free income in the present case to that of a tax-free gift, bequest, legacy, or other tax-free addition to the taxpayer's estate. One who receives a tax-free gift and later sells it, in the absence of statute providing otherwise, is taxed upon the profit arising from the difference in its value at the time he receives it and the sale price. Similarly one who receives a tax-free bequest, when selling it, is taxed upon the profit arising from any excess of the sale price over its fair market value at the time of receipt. The measure of liability of the taxpayer here is to be determined by the same standard; his tax, in case of sale, is to be computed just as if the dividend had not been tax-free. He must account for any difference between the stipulated value of $100 and the selling price. If this property were added to his estate by inheritance, and if there were no laws taxing it, upon sale of the same, under the established policy of the revenue laws of the United States, a tax would be assessed upon any profit resulting from a sale in excess of its value at the time he received it. The same yardstick must apply here.

Consequently, the sale of the stock having been for the same amount as the fair cash market value at the time he received it, no profit resulted, and no tax liability exists. The decision of the Board of Tax Appeals is reversed, with directions to proceed in conformity with this opinion.