**INDUSTRIAL TRUST CO. et al. v. BROD-ERICK, Collector of Internal Revenue.**

No. 3302.

Circuit Court of Appeals, First Circuit.

Feb. 15, 1938.

Andrew P. Quinn, of Providence, R. I. (Richard F. Canning, of Providence, R. I., on the brief), for appellants.

Loring W. Post, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and W. Croft Jennings, Sp. Assts. to the Atty. Gen., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a judgment of the federal District Court for Rhode Island in favor of the defendant. The action is a suit at law by the executors of the estate of George M. Parks against the Collector of Internal Revenue to recover the sum of $14,499.49, the amount of a deficiency tax assessed against the estate for the year 1934. Having paid the tax, claims for refund were duly made and rejected, and thereafter the plaintiffs brought this suit.

The case was tried before the judge in the District Court, trial by jury having been duly waived, upon an agreed statement of facts, supplemented by oral testimony. It appeared that Mr. Parks, a resident of Providence, died on December 24, 1934, leaving a will; that in January, 1935, the plaintiffs qualified as executors under the will and are acting as such; that the defendant now and at the time in question was the Collector of Internal Revenue for the District of Rhode Island; that the plaintiffs seasonably filed the income tax return of Mr. Parks for the calendar year of 1934; that in the return they deducted from gross income the sum of $68,258.57, representing certain alleged losses arising out of the following transactions entered into by Mr. Parks. As to the first transaction it appeared that on April 6, 1929, he paid the Massachusetts Mutual Life Insurance Company $57,000 for an annuity policy, without refund, under the terms of which the company agreed to pay him $475.38 each month during his lifetime, beginning April 28, 1929; and that prior to his death on December 24, 1934, he had received payments aggregating $32,325.84; and, as to the second one, that on January 16, 1930, he paid the Phenix Mutual Life Insurance Company the sum of $78,410 for an annuity policy, without refund, under the terms of which he was to receive $740.97 each month during his lifetime, beginning February 16, 1931; and that, prior to his death, he had received under this policy the aggregate amount of $34,825.59.

The loss alleged to have been sustained by Mr. Parks in the first transaction consisted of the difference between the sum of $57,000 paid for the policy and the monthly payments aggregating $32,325.84 received by him during his lifetime, or $34,674.16; and in the second transaction an alleged loss of $43,584.41 similarly arising, plus an additional sum of $250, making a total loss in the two transactions of $68,258.57, which constitutes the deduction from gross income upon which the deficiency tax for the year 1934 was assessed.

The questions presented are: (1) Whether the sums constituting the difference between the amounts paid by Mr. Parks for the annuity policies and the sums received by him constitute losses which he sustained in his lifetime; and, if so (2) whether they were losses sustained in transactions for profit. In the District Court it was held that Mr. Parks suffered no loss in his lifetime, and that the transactions were not entered into for profit.

The applicable provisions of the Revenue Act of 1934 relating to deductions allowed individuals from gross income are found in section 23(e) and (2), 26 U.S.C.A. § 23(e)(2), which read:

"§ 23. *Deductions from Gross Income.*
"In computing net income there shall be allowed as deductions: * * *

"(e) Losses by Individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—* * *

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business."

The plaintiffs contend that the difference between the capital invested in these contracts by Mr. Parks and what he received constituted a loss sustained by him during the taxable year 1934; and that his purchase of these annuities were transactions entered into for profit. They say that he sustained a loss during the taxable year because he had not received back during that year and preceding years, in monthly payments on the annuity policies, sums aggregating the amount of capital invested in them, and therefore sustained a loss; that what he contemplated at the time he made each of these contracts was not merely the security that would be afforded him by receiving the monthly payments during the period of his life, but the receipt of sums equal to the capital invested and more. In other words, that he entered into the transactions for the purpose of making a profit and, therefore, he sustained a loss in transactions entered into for profit. The government, on the other hand, contends that Mr. Parks sustained no loss during the year; that what he purchased or invested his capital in was not a contract for a fixed or definite term of years, but simply for such period as he should live; that during his lifetime there was no breach of the contracts, as, during that period, he received the exact sums that he contracted for and what each company obligated itself to pay; that what he paid for the annuities was for the purpose of security during the period of his life and at the time of his death he had received what he contracted for; and that, the contracts being for security during the period of his life, they were not transactions entered into for profit.

Unless Mr. Parks can be said both to have suffered a loss during the taxable year and to have entered into the transactions for profit, the plaintiffs are not entitled to the deduction made and cannot recover the tax in question.

If each company by its contract had obligated itself to pay Mr. Parks during a fixed period of time, and before the expiration of that period the contract had been broken, and the amount contracted for exceeded the capital invested, undoubtedly he would have suffered a loss, and the transaction would have been one entered into for profit. But that is not the case here.

No case involving facts such as here presented has been passed upon by the courts. There is, however, a case (Helvering v. Louis, 64 App.D.C. 263, 77 F.2d 386, 387, 99 A.L.R. 620) in which the Court of Appeals for the District of Columbia had, before it a somewhat similar question, where it reversed the decision of the Board of Tax Appeals, holding that the taxpayer had sustained a deductible loss in the sum of $9,-184.56. There the taxpayer claimed that, inasmuch as her mother (during whose life the annuity was to be paid) had died in 1925, three years before the expiration of the period of expectancy, which was 15 years, 1 month, and 9 days from April 19, 1913, the date of the agreement, the taxpayer suffered a loss of $5,000 a year (the amount of the annual payment) for 3 years, or $15,000, which, if calculated back to April 19, 1913, would be valued at $9,184.56. There the loss claimed was the difference between the agreed cost of the annuity, $57,-753.50, as of April 19, 1913, based upon the mother's expectancy of life, and the value of the annuity as of April 19, 1913, as determined by the actual period of the mother's life—not the difference between the cost of the annuity and the payments received, as here. In discussing the situation, the court said:

"The taxpayer accepted the contract upon the basis of its terms which assured her of the payment of the annuity for the actual period of her mother's life and not for the period of her supposed expectancy of life. Had the contract stipulated for a payment of $5,000 a year for 15 years, 1 month, and 9 days, a default of payment for the last 3 years, 1 month, and 9 days of that period would have caused a loss computable upon a different basis than now obtains in this case. But the contract as executed was not for the payment of the annuity for a fixed term of years, but only for the period of her mother's life. Consequently, the calculated difference between the expected value of the annuity contract as of the time when executed and its actual value as afterwards determined, does not furnish a basis for the taxpayer's claim of a deductible loss."

This was undoubtedly one ground upon which the court decided that the taxpayer had suffered no loss. But as a further ground of decision, inasmuch as it appeared

that the taxpayer, the annuitant, had received annual payments in excess of the consideration paid for the contract, $57,-753.50, by the sum of $2,236.50, the court further held:

"Inasmuch as the full cost of the annuity had already been paid to the taxpayer the loss of these expected gains was not a deductible loss."

■ The plaintiffs contend that the first ground of the decision—that the taxpayer suffered no loss—is clearly wrong, but we are of the opinion that, inasmuch as the ground of the decision was based upon the nature and construction of the contract there in question, it cannot be said to be unquestionably wrong, and, as it is the practice in this circuit, under such circumstances, to follow the decision of another circuit, we are inclined to do so in this instance. The nature of the contracts under consideration and the death of the party for whose life the annuities were to be paid being the same in both cases, that decision should be followed unless manifestly wrong, especially as the question for decision relates to whether a loss has been sustained within the meaning of section 23(e)(2).

■ Neither do we think Mr. Parks at the time he entered into the contracts in question did so with the view of making a profit. As above said, what he was seeking was security during the term of his life, not profit, and received what he contracted for.

■ But the plaintiffs further contend that Congress has recognized that annuity contracts are entered into for the purpose of profit, whether made for the term of a life or for a fixed period; that this recognition is disclosed in section 22(b)(2), 26 U.S.C.A. § 22(b)(2), where, in the second sentence of subdivision (2), relating to annuity contracts, it is in effect provided that the excess of annuity payments over the consideration paid shall be determined in portions from year to year by an arbitrary rule (3 per cent. of the consideration), and the amount so determined for a given year be treated as income during the year, though no income in fact was earned or received in that year, and shall be included by the taxpayer in gross income; that this discloses that Congress intended that annuity contracts should be considered as transactions entered into for profit. But we do not think that the second portion of section 22(b)(2) was intended to convey such meaning.

Throughout the Revenue Laws the words gain, profit, or income mean an actual, not a fictitious gain or profit, and where a gain or profit has not and never can be made, as is the situation here, it is doubtful if Congress ever entertained such an intention or meant to declare by an arbitrary rule that to be gain, profit, or income in a given year which has not been actually or potentially acquired either in that year or at any other time. Entertaining these views we are not inclined to construe section 22(b)(2) as lending such recognition or as bearing on the purpose with which the contracts or transactions in question were entered into.

The plaintiffs also rely upon the decision of the Board of Tax Appeals in the case of George M. Cohan, 11 B. T. A. 743, 748, 749, to support their contention that Mr. Parks sustained a loss in a transaction for profit. But the facts and circumstances attending the action of Cohan in entering into the contracts or transactions there in question clearly disclose that it was for the purpose of profit and that, on his being advised that they were unprofitable, he broke the contracts and took a loss in the amount of the first payments he had made of $18,874. The facts found by the Board of Tax Appeals in that case show that in September, 1918, Mr. Cohan invested in three annuity contracts with the Union Central Life Insurance Company, by which he was to make premium payments of $18,874 each year for 15 years; that, upon the expiration of that time and the receipt of the designated payments, the company was to pay him the sum of $2,000 monthly for 10 years, beginning September 18, 1933, and if he was alive at the expiration of the 10 years, the company would then pay him the same amount for each year he continued to live. It was further found that, at the time Cohan purchased the contracts, his counsel was out of the city; that when counsel returned he submitted the contracts for his examination; that he advised him that they were unprofitable and that the longer he carried them the more unprofitable they would be and to get any return he could on the premiums he had paid and refuse to pay any more premiums; that, after unsuccessful efforts to secure a refund of the premiums paid, he refrained from paying the premiums which fell due in 1919 and forfeited the amount of $18,874 paid in 1918; that this was an absolute loss, and the Board of Tax Appeals allowed it as a deductible loss. This portion of the decision of the Board was affirmed without comment by the Circuit Court of

Appeals in the Second Circuit. Cohan v. Com'r of Internal Revenue, 39 F.2d 540.

We do not regard that case as controlling here. There the annuities for 10 fixed years were required to be paid whether Mr. Cohan lived or not, and were not for security. The evidence showed that he had entered into the contracts unadvisedly in the belief that they were profitable, and, on ascertaining they were not, canceled them.

The judgment of the District Court is affirmed.