THE CITIZENS NATIONAL BANK OF KIRKSVILLE, MISSOURI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96808. Promulgated August 15, 1940.

*Henry J. Plagens, Esq.*, for the petitioner.
*Angus R. Shannon, Esq.*, for the respondent.

542

**OPINION.**

ARNOLD: Petitioner does not now claim that the $2,400 paid to Frank Baird is deductible as rent. It claims that the payments so made are deductible (1) as exhaustion or amortization of the terminable interest acquired from Frank Baird, or (2) as annuity payments made in the acquisition of Frank Baird's interest. In the alternative petitioner claims that $1,971.44 thereof is deductible as that portion of Frank Baird's interest in the building that was demolished in 1923.

In determining the issue presented, the situation at the time the contract was executed must be borne in mind. Petitioner had been occupying the premises for 14 years, paying rent first to Frank Baird's father and then to Frank Baird. In giving the income from the property to his son for life, the father's will had charged the son with making repairs to the building, carrying the insurance thereon and heating it. In April 1920 the building was old and badly in need of repairs to make it suitable for petitioner's business. If Frank Baird made the necessary repairs it would entail considerable expense, as evidenced by the $15,000 petitioner laid aside for alterations and repairs in 1920, 1921, and 1922. Also at the time there were matters personal to Frank Baird which made the time opportune to negotiate for his interest in the property.

Petitioner contends that Frank Baird conveyed only a terminable interest by the instrument of April 21, 1920, and that he retained a contingent reversionary interest. Even if this were true, we think that subsequent events, occurring prior to the taxable year, dissipated any limitation placed on the conveyance. As the owner of the net income from the building for life, Frank Baird had certain duties and responsibilities to his sister as remainderman, some of which were specifically provided for by his father's will. Under the contract with Frank Baird petitioner acquired the right to make repairs, but it could not commit waste against the remainderman, such as would occur if it demolished the building. After acquiring the remainderman's interest, petitioner could commit no waste as against itself as assignee of the life tenant, and when it started to make certain repairs in 1923, which ended in the construction of a new building, it constructed the building as remainderman and not as assignee of the life tenant.

It should be noted that the conveyance by Frank Baird relieved him of certain obligations which constituted additional consideration for the contract. Furthermore, the contract fixed and determined the amount of monthly income he would receive from the property. Thereafter the expenses of renting, repairing, except as to the roof, and heating the building fell upon the petitioner. After the construction of the new brick and stone building it is doubtful whether the contract provision that Frank Baird should keep the roof repaired had any real significance. Certainly, the contract related to the building as it then existed in 1920, badly in need of repairs. The provision, that if the building became untenantable petitioner's obligation to make the monthly payments should cease and determine, lost its force after the erection of the new structure. The provision regarding the ending of petitioner's rights and liabilities upon the destruction of the building by fire or storm ceased to be a serious limitation after petitioner became the owner of the remainder in-

terest. Thus, it appears, that, after 1923, Frank Baird's only substantial right under the contract was the right to receive $200 per month, and his only obligation was to pay certain insurance charges, which averaged $33.84 per year.

Petitioner relies upon our decision in *Elmer J. Keitel*, 15 B. T. A. 903, and *Floyd M. Shoemaker*, 16 B. T. A. 1145, as justifying its exhausting the terminable interest acquired from Frank Baird. These cases are distinguishable. Frank Baird had outlived his life expectancy by 1936, and, even if petitioner were entitled to exhaust the value of the asset acquired, the value thereof, as stipulated, would have been exhausted prior to the taxable year. The cited cases capitalized the purchase price of the terminable interest in order to exhaust it, and we do not understand this petitioner to contend that the monthly payments were not capital expenditures. Certainly, its claim for exhaustion contemplates that a capital expenditure was made. Unless the petitioner can point to some deduction, authorized by statute, the capital investment must remain until the property is sold or otherwise disposed of.

Petitioner's second contention is that the monthly payments are deductible as an expense or loss. The argument advanced is that petitioner, in effect, wrote an annuity on the life of Frank Baird at $197.18 per month ($200 less average monthly insurance charges of $2.82); that by October 1933 the total monthly payments to Frank Baird equaled the value of the property acquired from him; and that all subsequent payments constituted income to Frank Baird and an expense or loss to petitioner under the rule announced in *Commissioner* v. *Moore Corporation*, 42 Fed. (2d) 186, affirming 15 B. T. A. 1140.

The premise of this contention is that petitioner ventured into the field of annuity writing for profit or loss, that a loss resulted as to each payment made after October 1933, and that the total payments made during 1936 are deductible. If the premise be granted, the argument finds support in the cited case, but we can not agree with the premise.

In our opinion petitioner was purchasing a capital asset, the right to possession of property; it was not writing an annuity for profit. Frank Baird was given the possession and net income from the building for his lifetime. Petitioner had been the tenant of Frank Baird and his father before him for years. It was possession of the property which petitioner sought and the consideration therefor took the form of monthly payments. The contract fixed the net income from the building for Baird, relieved him from certain obligations, and transferred possession of the building to petitioner. Likewise, the contract fixed the monthly payments to be made by petitioner for possession and enjoyment of the building and measured

its tenure by the life of the vendor. Except for certain contingencies, which became increasingly remote, the contract assured petitioner's continued possession and use of the property for business purposes during Frank Baird's lifetime. By the acquisition of the remainder interest and construction of a new building petitioner practically removed all contingencies and insured its permanent possession of the property. But for the restrictive provisions of section 23 (a) of the Revenue Act of 1936 regarding payments made as a condition to the continued use or possession of this property, petitioner might justify the deduction of its monthly payments as rent. Clearly, however, this petitioner had a substantial equity in the property during 1936 and would have a clear title thereto after the death of Frank Baird. In these circumstances the statute precludes the deduction, and the facts of record necessarily catalogue the payments as capital expenditures. See *Corbett Investment Co.* v. *Helvering*, 75 Fed. (2d) 525; *Helvering* v. *Louis*, 77 Fed. (2d) 386; *Klein* v. *Commissioner*, 84 Fed. (2d) 310; *Commissioner* v. *Smiley*, 86 Fed. (2d) 658; and *Edwards* v. *Commissioner*, 102 Fed. (2d) 757.

Petitioner contends in the alternative that it is entitled to deduct $1,971.44 of the $2,400 payment made in 1936 as representing that portion of the payment applicable to Baird's interest in the building demolished in 1923, citing *Louis Pizitz Dry Goods Co.*, 22 B. T. A. 161; *Parma Co.*, 18 B. T. A. 429; and *Ingle* v. *Gage*, 52 Fed. (2d) 738. The cited cases hold that the fee owner is entitled to deduct losses resulting from voluntary demolition of buildings when the property was purchased with no intention of demolishing the building and erecting a new structure thereon. None of the cited cases deal with the interest of a life tenant in a building voluntarily demolished.

We doubt that petitioner would seriously contend that it demolished the building in 1923 as assignee of the life tenant, or that the entire value of the building so demolished should be allocated to the life tenant and no value should be allocated to the remainderman. It can not be presumed that a life tenant would deliberately commit waste as against his remainderman, and certainly the demolition of the building in 1923 was more properly attributable to petitioner as remainderman than as the assignee of the life tenant. Furthermore, it is inconceivable that petitioner, as assignee of a life tenant, 64 years of age in 1923, would erect a new building of brick and stone if its tenancy would so shortly terminate. Obviously, the new structure was erected by petitioner as remainderman, and Frank Baird was content to rely upon his personal contract with the bank for his monthly payment. Whatever loss petitioner sustained as a result of the demolition of the building occurred in 1923, and no part of the additional payments to Baird for the right of possession

transferred in April 1920 was lost as a result of the demolition. The payments were capital in nature and constituted a part of the cost of the premises occupied by petitioner. This disposition renders it unnecessary to decide respondent's contention that a merger resulted upon the acquisition of the interest of Frank Baird and Alta Baird Belshe. In either event petitioner is not entitled to the deduction claimed.

*Decision will be entered for the respondent.*