CITIZENS NAT. BANK OF KIRKSVILLE, MO., v. COMMISSIONER OF INTERNAL REVENUE.

No. 11901.

Circuit Court of Appeals, Eighth Circuit.

Oct. 16, 1941.

Rehearing Denied Nov. 4, 1941.

Henry J. Plagens, of Kansas City, Mo., for petitioner.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is a petition by a taxpayer to review a decision of the United States Board of Tax Appeals redetermining the petitioner's income tax for the year 1936. 42 B.T.A. 539. The amount in controversy is $360. For its finding of facts the Board adopted a stipulation of facts entered into by the parties, a brief summary of the pertinent portion of which follows.

The petitioner is a corporation engaged in the general banking business at Kirksville, Missouri. From 1906 to 1912 it rented the premises occupied by it from William T. Baird who died testate in the latter year.

Under his will his son Frank Baird was given the income from the property during his life-time with remainder to his daughter, Alta Baird Belshe. The will provided that in case of the destruction of the building by fire or tornado during the life of Frank, Alta Baird Belshe might rebuild using the insurance money for that purpose, and that thereafter she would be the owner by paying Frank an amount monthly equal to the amount he had been realizing net out of the rental of the property.

In 1920 the building was in need of repairs; and on April 21st the bank entered into a contract with Frank Baird, by the terms of which Frank Baird conveyed his interest in the property to the bank in consideration of the payment to him of $200 a month during life, Frank agreeing to keep the roof in repair and giving the bank the right to make other repairs. The contract provided further: "It is further agreed that first party shall keep the said building insured in the amount for which it is insured at this time, and should the said building be destroyed or become untenantable, then the obligation to make said monthly payments of two hundred dollars shall cease and determine, and in event said building is destroyed by fire or storm, the rights and liabilities of said second party herein granted and created shall end, and the parties hereto shall stand in the same relation to each other as if this agreement had never been made."

On August 17, 1920, the bank purchased the remainder interest in the property from Alta Baird Belshe for $10,000. On December 4, 1920, the bank set aside the sum of $5,000 for "improvements of building fund", and equal amounts were set aside in 1921 and 1922, making a total of $15,000 for this purpose.

On January 10, 1923, the bank authorized repairs and alterations to be made to the building. It was then found to be more practical because of the damaged condition of the building to demolish it and to construct a new building. This was done. A new building was constructed at a cost of $43,096.96, and the bank has since occupied the first floor of the new building.

Since the acquisition of the premises the bank has carried both the land and building as a capital asset.

The bank paid Frank Baird $200 a month from 1920 to 1936 inclusive, and Baird paid insurance under the terms of the agreement averaging $33.84 a year, or $2.82 a month,

leaving an average monthly net income of $197.18.

Frank Baird was 61 years of age April 21, 1920, and had a life expectancy based on mortality tables of 13.47 years. The value of an annuity of $197.18 a month similarly computed as of April 21, 1920, is $21,918.37. On the last date mentioned the fair market value of the land and building was $35,000, and of the land alone $6,250.

On its income tax return for 1936 filed on the cash receipts and disbursements basis, the bank deducted $2,400 paid to Frank Baird as rent. The Commissioner disallowed it, and on redetermination the Board affirmed.

Before the Board and in this court the bank claims the $2,400 paid Frank Baird is deductible, not as rent, but (1) as exhaustion or amortization of the terminable interest acquired from Frank Baird, or (2) as annuity payments made in the acquisition of Frank Baird's interest; or (3), in the alternative, it is claimed that $1,971.44 representing that portion of the $2,400 payment made in 1936 applicable to the payment for Frank Baird's interest in the building demolished in 1923 is deductible.

A deduction in calculating income taxes is not a matter of right but of "congressional grace". If a deduction is allowable on any of petitioner's theories, authority therefor must be found in some applicable statute. White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Burnet v. Thompson Oil & Gas Co., 283 U.S. 301, 304, 51 S.Ct. 418, 75 L.Ed. 1049; New Colonial Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Helvering v. Insurance Co., 294 U.S. 686, 689, 55 S.Ct. 572, 79 L.Ed. 1227; 26 U.S.C. A. Int.Rev.Code, § 23, note 17.

The petitioner contends, first, that the $2,400 is deductible as exhaustion or amortization of a terminable interest in the property acquired by it from Frank Baird under § 23(a) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code, § 23(a) (1). Section 23(a) of said Act provides:

"In computing net income there shall be allowed as deductions:

"(a) Expenses. * * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually

rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

■ The fact that it was necessary for the bank to make monthly payments of $200 each because it was bound by contract to do so does not imply that such payments are deductible under § 23(a). Many necessary payments are charges upon capital and cannot be deducted from income as an expense. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. The payments in controversy are a capital outlay and not an ordinary and necessary expense in the operation of business. The sum of the payments constitute the purchase price of the life estate, and the fact that the purchase price is payable in installments does not take the payments out of the class of capital expenditures which are not deductible. See Robert Hoe Estate Co., Inc., v. Commissioner, 2 Cir., 85 F.2d 4; Corbett Investment Co. v. Helvering, 64 App.D.C. 121, 75 F.2d 525; Herzberg v. Alexander, D.C. Okl., 5 F.Supp. 334.

■ Section 23(a) allows deductions for "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property", but such deduction is limited to "property to which the taxpayer has not taken or is not taking title or in which he has no equity." It is petitioner's contention that in 1936 it had not "taken", was not "taking title", and that it had no "equity" in the property. The bank contends that it had only a leasehold interest and that, since the cost of acquiring a leasehold is an exhaustible capital investment returnable by annual deductions spread over the term of the lease (United States v. Boston & Providence R. R. Corporation, 1 Cir., 37 F.2d 670; J. Alland & Bro., Inc., v. United States, D.C., 28 F.2d 792), in order to deny the taxpayer the right to the deduction claimed it is necessary to hold that the life interest acquired from Frank Baird and the remainder acquired from Mrs. Belshe merged. We think this is a mistaken view of the interest the bank holds in the property. Whether there was a merger or not is immaterial. It is true that

the bank's contract with Frank Baird is terminable upon the contingency that the building upon the premises "is destroyed by fire or storm". But the bank had prior to 1936 also acquired all the rights of Alta Baird Belshe under the will of William T. Baird. The rights thus acquired are not terminable, and they cover the leasehold and provide against the same contingencies referred to in the contract between Frank Baird and the bank. Under the will Alta Baird Belshe is given a fee simple title upon the death of Frank Baird and in case of destruction of the building by fire or tornado prior to his death, "Alta Baird Belshe was given the right to rebuild, using the insurance money in such rebuilding, and would thereafter own the property by paying Frank Baird an amount monthly equal to the amount he had been realizing net out of the rental from the property." In case of destruction of the building by fire or tornado the bank, therefore, has a right to rebuild and take title subject only to the obligation to pay Frank Baird monthly payments in the amounts prescribed by the will. In other words, by the performance of the conditions specified in the will the bank will become the owner of the fee simple title. The right or interest of the bank in the property is under the will therefore an equitable title. "An equitable title is a right possessed by a person to have the legal title to property transferred to him upon the performance of specified conditions." Karalis v. Agnew, 111 Minn. 522, 127 N.W. 440, 441; 20 C.J. 1304. That this right existed under the will and the conveyance from Alta Baird Belshe cannot be questioned. It is not necessary, therefore, to find a merger of the life estate and the remainder. The taxpayer in 1936 had an equity in the property; and in such a case the statute by its express terms does not permit a deduction.

■ Further, it cannot be said that the bank is not "taking title". Under its agreements with Alta Baird Belshe and Frank Baird the bank has done everything necessary to vest in it the fee simple title upon completion of the required payments. No contingency mentioned in the will or the contracts can prevent such a consummation. In this situation a deduction is expressly prohibited by the statute.

The taxpayer's first theory under which it claims a right to the deduction fails. The capital asset being acquired is the entire interest in the property, and it cannot be separated under the facts stipulated and a

part of the cost amortized. See Herzberg v. Alexander, supra.

Petitioner's second contention is that the 1936 payments are deductible as a loss under § 23(f) of the Act, which provides for a deduction by corporations in case of "losses sustained during the taxable year and not compensated for by insurance." The theory upon which this contention is based is in substance that the bank's agreement to pay Frank Baird $197.18 a month ($200 less $2.82 monthly insurance charge) constitutes a contract to pay an annuity; that the value of such an annuity based upon Baird's life expectancy is $21,918.37; that the payments made to Baird equalled this sum in 1933; and that all subsequent payments constituted an expense or a loss to the petitioner and gain to Baird.

The petitioner relies upon the case of Commissioner v. John C. Moore Corporation, 2 Cir., 42 F.2d 186, to support its annuity theory. The theory is further elucidated in Allen v. Brandeis, 8 Cir., 29 F.2d 363. The latter case is expressly disapproved by the Supreme Court in Helvering v. Butterworth, 290 U.S. 365, 369, 54 S.Ct. 221, 78 L.Ed. 365, in which case the court refused to follow the annuity theory. In the instant case the theory is purely fictitious and bears no actual relation to the transaction between the parties. The relation in this instance is entirely contractual. The bank bargained to purchase and Frank Baird to sell the right to the possession of the premises during the life of Baird. Nothing in the contract relates to the market value nor to Baird's life expectancy. The parties were at liberty to pay and receive any price agreed upon whether more or less than market value. The amount agreed upon, although payable in installments contingent as to number during life, was a capital investment and is not deductible either as a business expense under § 23 (a) nor as a loss under § 23(f) of the Act. This court in a well-reasoned opinion by Judge Booth so held in Mastin v. Commissioner, 8 Cir., 28 F.2d 748, 752, 753. In that case Thomas Mastin and his sister Theo Mastin Lovejoy agreed to pay their mother and aunt certain funds annually during life in exchange for certain corporate stocks. On his income tax return Thomas Mastin claimed a deduction for such payments. The court said: "Losses must come from closed and completed transactions. * * * The consideration from Julia Mastin and Elizabeth Mastin passed at once and as a whole. The consideration from Thomas Mastin and Theo Mastin Lovejoy passed by installments. Whether there was a loss to Thomas Mastin and Theo Mastin Lovejoy on the transaction could not be told until the transaction was closed. It was not closed until the deaths of Julia Mastin and Elizabeth Mastin." It was held that the so-called annuities were "payments for a capital asset", and not deductible. So in this case, the payments by the very terms of the contract were for a capital asset and not for an annuity. They are not deductible on the annuity theory. See Corbett Investment Co. v. Helvering, 64 App.D.C. 121, 75 F.2d 525; Helvering v. Louis, 64 App. D.C. 263, 77 F.2d 386, 99 A.L.R. 620; Commissioner v. Smiley, 2 Cir., 86 F.2d 658; Edwards v. Commissioner, 10 Cir., 102 F.2d 757; Steinbach Kresge Co. v. Sturgess, D. C., 33 F.Supp. 897.

Petitioner's third contention, in the alternative, is that the bank is entitled to deduct that portion of the $2,400 payment made in 1936 applicable to Frank Baird's interest in the building which was demolished in 1923, which amount is estimated to be $1,971.44. The estimate is derived from the agreed fair market value of the building in 1920.

Petitioner relies upon the decisions of the Board in Louis Pizitz Dry Goods Co. v. Commissioner, 22 B.T.A. 161; Parma Co. v. Commissioner, 18 B.T.A. 429; and Ingle v. Gage, D.C.W.D.N.Y., 52 F.2d 738; Union Bed & Spring Co. v. Commissioner, 7 Cir., 39 F.2d 383; Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L. Ed. 911. The last cited case involves bad debts, and is not in point. The other cases are clearly distinguishable from the instant case. In each of them the loss was deducted the year the demolition took place. In the present case the loss is claimed thirteen years later. In the cited cases there was a definitely ascertained base upon which to calculate the loss. That is not true in the case under consideration. The fair market value of property furnishes no basis for determining loss sustained by destruction of property. In computing loss the provisions of the statute must be complied with. Section 111 of the Revenue Act of 1936, 26 U. S.C.A. Int.Rev.Code, § 111, prescribes the method. It provides that the basis for any loss shall be determined under § 113(a) and (b) of the Revenue Act of 1936, 26 U.S.C. A. Int.Rev.Code, § 113(a, b). Section 113 (a) provides that the unadjusted basis of

property for determining gain or loss "shall be the cost of such property", subject to exceptions not applicable in this instance. In no event could the loss be ascertained in 1936. The loss did not occur in that year. The cost cannot be ascertained until after the death of Frank Baird. Petitioner has not demonstrated its right to the deduction claimed under the third theory.

The order under review is affirmed.