## COMMISSIONER OF INTERNAL REVENUE v. JOHN C. MOORE CORPORATION.
### No. 328.

Circuit Court of Appeals, Second Circuit.
June 23, 1930.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and Harvey R. Gamble, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

George Maurice Morris, of Washington, D. C., Kendall B. Castle, of Rochester, N. Y., and Allen H. Gardner, of Washington, D. C. (Castle & Fitch, of Rochester, N. Y., and KixMiller, Baar & Morris, of Washington, D. C., of counsel), for respondent.

Before L. HAND, CHASE, and MACK, Circuit Judges.

MACK, Circuit Judge.

On December 26, 1912, taxpayer, a corporation engaged in the manufacture of record-keeping devices, obtained a conveyance of certain land and buildings theretofore leased by it, from one Hattie I. Moore, in consideration of its undertaking to pay her $10,-000 a year for life. The fair market value of the property received, both on the day of the conveyance and on March 1, 1913, was $80,000, of which $61,968 represented the buildings and $18,032 the land. Mrs. Moore was 64 years old at the time of the conveyance and in very poor health. Her condition became worse during the next four years, and in 1917 she persuaded the taxpayer, in view of her expected early demise, to increase the annual payments to $14,000. The company's officers believed, both in 1912 and 1917, that the value of the realty conveyed was, in view of Mrs. Moore's poor health, equal to, if not greater than, the value of the annuity.[1]

The Commissioner refused to permit the taxpayer to deduct any part of the $14,000 annual payments from its gross income for the tax years 1922 and 1923. In reversing the Commissioner, the Board of Tax Appeals considered the transaction as though the taxpayer had purchased the real estate at its then value, $80,000, and for the $80,000 had given its obligation to pay the $10,000 annuity. It held that $10,000 of each such annual payment consisted in part of principal and in part of interest, and that the amount deductible as interest for each year was the difference between the $10,000 and its discounted value as of December 26, 1912; that is, that the $10,000 of each annual payment should be divided into a non-deductible capital expenditure equal to its December 26, 1912, value (i. e. discounted back to that date) and the interest on a 6 per cent. annual basis for the intervening period. The Board further held that the annual increase of $4,000, paid since 1917, was a gratuity and accordingly not deductible.

The government contends: (1) That the transaction was an ordinary sale of real estate in which the consideration was annual payments for the life of the seller; (2) that

the whole of such deferred payments constituted an annual capital expenditure and no part thereof was therefore deductible; and (3) that the Board's method of treating the transaction as the purchase of an annuity by the seller is a fiction and tends to confuse the administration of the statute. Respondent contends: (1) That the Commissioner's treatment of the transaction makes proper account impossible, necessitates an endless series of amended returns and refund claims, deprives it of any certainty of cost for ascertaining gain or loss upon sale, destruction, or depreciation, and may by the running of the statute of limitations deprive it of refunds; and (2) that the Board's treatment of the transaction is fair, practicable, in that it requires no retroactive correction, and proper within the applicable statute. The controlling Revenue Act is set out in the margin.[2]

1. The findings of fact stated to be based upon a stipulation are to the effect that the Commissioner allowed a deduction of $2,400 in each of the years as depreciation on the buildings. The basis for this calculation is, however, not shown. It is not apparent from the records just what depreciation the Board allowed, and no basis of calculation is given other than the statement in the opinion "that the cost of the real estate of the petitioner was $80,000 and that depreciation was properly to be computed on that basis." Whether this means on the basis of $80,000 and thus includes a depreciation at 2½ per cent. on land, as well as buildings, or whether it means a depreciation on $61,968, the value of the buildings, assuming the value of both land and buildings to have been $80,000, is not entirely clear.

Assuming, however, without deciding, that the Commissioner could have assigned error on an allowance of depreciation in excess of 2½ per cent. of the stipulated value of the buildings on March 1, 1913, notwithstanding the fact that he himself had allowed $2,400 a year for depreciation, no proper as-

[1] It was stipulated that the life expectancy of a person of Mrs. Moore's age on January 1, 1913, was 17.4 years, and that the value of a $10,000 annuity for that length of time was $106,173.96. Similarly, the sum of $80,000 was the value on December 26, 1912, of a $10,000 annuity to one whose life expectancy was 11.208 years, and represents the value at that time of a $10,000 annuity for 11.208 years, calculated on a 6 per cent interest basis.

[2] Revenue Act of 1921, c. 136, 42 Stat. 227, 252, 254:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230, there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

(2) All interest paid or accrued within the taxable year on its indebtedness, * * *

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise.

signment of error has been made. A general assignment that "the Board of Tax Appeals erred in its final order of determination that there is a deficiency in income tax due" in the sum found to be the deficiency, or "in failing and refusing to enter a final order of determination" that there is such deficiency in a different amount specified by the Commissioner, is entirely insufficient to justify a review on the point in question.

2. We find no difficulty in approving the method employed by the Board in treating the transaction as a sale of an annuity to Mrs. Moore in return for her conveyance of property agreed to be worth $80,000. It is not necessary to predicate the result on the fiction of dividing the sale of the property and the purchase of the annuity, each for $80,000, into two transactions. An annuity writer can accept property for his annuity agreement as well as cash. Warner v. Walsh, 15 F.(2d) 367 (C. C. A. 2d). Nor is this conclusion any the less warranted because a $10,000 annuity for the life expectancy of a normal person of Mrs. Moore's age, stipulated to be 17.4 years, would ordinarily be worth, not $80,000, the agreed value of the property received, but $106,173.96. The parties were free to ignore the mortality tables and to make their own estimate; in view of Mrs. Moore's condition of health at the time, they were justified in basing their calculations on a life probability of not more than eleven years. That subsequent events showed her to be much hardier than either party suspected cannot affect the contract made in December, 1912.

3. The undertaking to pay an annual increase of $4,000 after 1917, however, appears on this record to have been wholly without consideration; accordingly, such increases paid during the taxable years were pure gratuities and may not be deducted.

4. The question therefore is whether or not an annuity writer may deduct a portion of the annual payment made to the annuitant as either a necessary expense, loss, or interest paid or accrued during the taxable year. The rule formerly applied by the Commissioner and accepted as such by this court in Warner v. Walsh, 15 F.(2d) 367, without argument on this point, was that the whole of each annual payment is to be considered a repayment of capital until the entire purchase price of the annuity shall have been paid. This decision was followed in United States v. Bolster (C. C. A. 1st) 26 F.(2d) 760, 59 A. L. R. 491, and Allen v. Brandeis,

29 F.(2d) 363 (C. C. A. 8th).[3] This rule has the merit of simplicity.

Shortly after the decision in the Walsh Case, however, the majority of the Board of Tax Appeals carefully re-examined in Klein v. Commissioner, 6 B. T. A. 617, the subject of annuity payments by private persons and/or companies. They held that difference between the cost (calculated ordinarily on mortality tables showing an average life expectancy although also determinable, as here, on other bases) and the sum of the estimated annual payments, may properly be deemed interest, since it represents the amount paid by the writer of the annuity for the use of the money between the date of purchase and the dates of the periodic payments. Even though annuity payments are not expressly so apportioned, the Board held that analytically they should be; they determined the apportionment between capital and interest payments by discounting each payment to the date of purchase at an agreed rate. This decision was acquiesced in by the Commissioner (Cum. Bull. I. R., VII–L, p. 17), and has been recognized as a more accurate, if somewhat more complicated, analysis of the problem than the earlier one. See Eldredge v. United States, 31 F.(2d) 924, 929 (C. C. A. 6th). In the case at bar, the Board applied the rule of the Klein decision, and determined that the taxpayer was entitled to deduct, as interest paid during the taxable year, the difference between the $10,000 and its value as of December 26, 1912,[4] the date of purchase, discounted at the agreed rate of 6 per cent.

As respondent does not complain of the adoption of the Klein case rule rather than what for it would be the more advantageous Walsh case rule, it is unnecessary in this case to determine which of these two is to be finally adopted by this court, or whether indeed a third rule not as yet considered by the Board or by a court is to be preferred. The possible third rule would apportion to interest and permit the deduction of that portion of each yearly payment which would represent interest at the agreed rate on so much of the purchase price as from year to year remains

[3] In neither of these cases was there any citation by court or counsel of the Klein Case, 6 B. T. A. 617, which had been determined after the Walsh Case but before these decisions.

[4] The transcript reads "the present value of such payments on February 26, 1912." From the entire context, however, this appears to be a typographical error and should read "December 26, 1912," which was the date of the contract.

unreturned. This method would more nearly approach that employed by insurance companies in their annuity calculations. The differences in the three possible methods would be important both to the annuity writer and to the annuitant. To illustrate in the instant case: (1) Under the rule of the Walsh case, the first eight annual payments of $10,000 would be treated wholly as capital returns, and no part thereof would be either taxable as income to the annuitant or deductible as interest payments by the annuity writer; all subsequent payments would be considered wholly as income to the annuitant and expense or loss to the writer. (2) Under the Klein case rule, the annuity is treated as a series of separate installments for the expected life of the annuitant; each of these installments is considered as consisting of a return of capital, determined by discounting the amount of the installment back to the date of purchase,[5] and of an interest payment equivalent to the difference between this capital return and the annual payment. The proportion of capital return in each installment decreases and the proportion of interest increases until the end of the estimated life of the annuitant; if he lives longer than the expectancy, the entire amount of each subsequent installment is treated as gain to him and loss or expense to the writer. (3) Under the possible third rule, each payment consists of the amount of annual interest on the capital remaining from year to year, plus so much of the capital as is necessary to make up the amount of the installment. Inasmuch as the remaining capital and the annual interest thereon continually decrease, the proportion of capital return in each installment increases and the proportion of interest decreases until the end of the estimated life of the annuitant. Thereafter, as under the Klein rule, each payment would be treated wholly as gain to the annuitant and loss or expense to the writer. Under both the second and third possible rules, payments made

after the period of the annuitant's life expectancy are treated alike; the difference between the two methods is in the allocation to capital return and to interest of each yearly payment prior thereto.

Inasmuch as the sole question before us is whether or not any deduction should be allowed on account of two annual payments made between the date of purchase and the date of the estimated final installment, and the government's assignments of error and argument have been devoted solely to this question, we need not, in approving the order of the Board, determine whether the Walsh rule, previously accepted by this court, or the Klein rule, adopted by the Board and herein applied, or the suggested third rule, is to be applied.

As under any of these rules some deduction was clearly proper, the order of the Board must be affirmed.

[5] Where the annuity was purchased prior to March 1, 1913, the application of the Klein rule would involve also the determination of whether or not each annual payment should be discounted back to the actual date of purchase or only to March 1, 1913; or, in other words, whether interest on an annuity payment accrued, though not payable, before March 1, 1913, may be deducted in the year it is actually paid. Cf. Ruth Iron Co. v. Commissioner, 26 F.(2d) 30 (C. C. A. 8th); Eldredge v. United States, 31 F.(2d) 924 (C. C. A. 6th). Inasmuch as this question has not been raised in the case at bar and should not be determined without consideration by the Board of Tax Appeals, and argument thereon, we pass it without decision.