**CONTINENTAL ILLINOIS BANK & TRUST CO. v. BLAIR (three cases).**

Nos. 4268–4270.

Circuit of Appeals, Seventh Circuit.
Nov. 24, 1930.

Hugh W. McCulloch and Frank H. McCulloch, both of Chicago, Ill., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch and Morton K. Rothschild, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before ALSCHULER, SPARKS, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

The above-entitled causes were commenced by petitions for redetermination of deficiencies in taxes. Three petitions were filed before the Board of Tax Appeals. These were consolidated for hearing there and for review here, and they will be disposed of in one opinion.

On June 22, 1920, Edward E. Ayer entered into a written contract with the Field Museum of Natural History, of Chicago, Ill., by which he agreed to transfer and deliver to the museum 500 shares of the 7 per cent. cumulative preferred stock of the Ayer & Lord Tie Company of the par value of $100 a share and of the actual value of $50,000, upon condition that during his life, or the life of his wife if she survived him, the museum would carry the revenues derived from said stock in its accounts and upon receipt of such revenues immediately remit the same amount to him or his wife as their interests may appear. On that day he delivered the stock to the museum and the same was transferred to it on the books of the company.

On the same day Ayer entered into a written contract with the Art Institute of Chicago, by which he agreed to deliver to the Institute 500 shares of the 7 per cent. cumulative preferred stock of the Ayer & Lord Tie Company of the par value of $100 a share and of the actual value of $50,000, upon condition that the income from said fund should promptly be paid over to him during his life and, after his death, to his wife, if she survived him. On that day he delivered the stock to the institute and the same was transferred to it on the books of the company.

On November 12, 1920, Ayer entered into a written contract with the Newberry Library, of Chicago, by which he agreed to transfer and deliver to the library 500 shares

of the 7 per cent. cumulative preferred stock of the Ayer & Lord Tie Company of the par value of $100 a share and of the actual value of $50,000, upon the same conditions for the payment of revenues from the stock as those in the contract first above mentioned; and on November 12, 1920, he delivered the stock to the library and caused the same to be transferred to it on the books of the company.

On November 14, 1922, Ayer entered into another written contract with the Newberry Library, by which he agreed to assign and deliver to the library $100,000 of United States Fourth Liberty Loan bonds (ten bonds of $10,000 each), upon condition that the net income of these bonds as collected be paid to him so long as he lived, and upon his death to his widow so long as she lived, and in case his wife should die before his death, to their daughter so long as she lived; and on that day he transferred and delivered said bonds to the library, which were thereupon registered upon the books of the Treasury Department of the United States in the name of the library. This contract was amended by the parties on February 5, 1925, so as to provide for the payment to him or his wife of $5,000 a year, and after the death of both of them to his daughter.

On November 17, 1922, Ayer entered into another written contract with the Field Museum of Natural History, by which he agreed to transfer and deliver to the museum $100,-000 of United States Fourth Liberty Loan bonds (ten bonds of $10,000 each), upon condition that all revenues derived from these bonds should be carried in the accounts of the museum, and upon receipt of such revenues by the museum remittance for the same amounts should be immediately sent to him during his life, then to his wife during her life if she survived him, or to his daughter if she survived him; and on that day he transferred and delivered said bonds to the museum, and they were duly registered in the Treasury Department of the United States in the name of the museum.

In each of these contracts there were provisions regarding the expenditure of the revenues from the funds after the death of the beneficiaries, and provisions as to reinvesting the funds upon maturity or when deemed prudent by the trustees of the institutions. These provisions in no way affect or alter the principal provisions of the contracts. There still remain, unaffected by these provisions, the agreements by Ayer to pay and the payment of the consideration, and the agreements of the institutions to pay, at certain periods, income or revenue, or amounts equal to them, or sums in money.

Ayer died May 3, 1927, and petitioner was appointed, qualified, and is now the executor of his estate. The sums provided for in the contracts were paid to Ayer during his life, and the question is: Were such sums taxable income?

The provisions of the Revenue Acts of 1918, 1921, 1924, and 1926 which are relevant to the question to be decided are substantially the same. Those of 1918 and 1926 are as follows:

Act of 1918, § 213 (40 Stat. 1065):

"That for the purposes of this title * * * the term 'gross income'—

"(a) Includes * * * gains or profits and income derived from any source whatever. * * *

"(b) Does not include the following items, which shall be exempt from taxation under this title: * * *

"(2) The amount received by the insured as a return of premium or premiums paid by him under life insurance, endowment, or annuity contracts, either during the term or at the maturity of the term mentioned in the contract. * * * "

Act of 1926, subparagraph (2) of paragraph (b) of section 213, 26 USCA § 954 (b) (2):

"(b) The term 'gross income' does not include the following items, which shall be exempt from taxation under this title: * * *

"(2) Amounts received * * * under a life insurance endowment, or annuity contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. * * * "

One definition of "endowment" is "property or pecuniary means bestowed as a permanent fund." In common acceptance it is understood to be "a fund yielding income for the support of an institution." Appeal of Wagner Free Institute of Science, 116 Pa. 555, 11 A. 402, 403.

An "annuity" is an allowance or payment from the income of a fund at specific periods and during a prescribed term.

The contracts now under consideration are endowment and annuity contracts, and as such fall within the exemption.

Ayer delivered to these institutions stocks

and bonds to the amount of $350,000, and received in return their obligations to pay him at stated times certain sums of money during a prescribed period. These sums are purchased annuities and, if income, are exempt, under the statute, until the purchase price has been returned. In the petitions for redetermination it was averred as to each agreement that Ayer had not received, under the terms of it, payment in excess of the amount paid by him therefor, and upon the hearing the parties admitted all material allegations of fact set forth in the petitions.

While no case precisely like the one under consideration has been called to our attention, petitioner has cited three cases which in principle warrant the holding that the sums paid Ayer are not taxable income. They are Warner v. Walsh, 15 F.(2d) 367 (2 C. C. A.); United States v. Bolster, 26 F.(2d) 760, 59 A. L. R. 491 (1 C. C. A.); and Allen v. Brandeis, 29 F.(2d) 363 (8 C. C. A.). In each of these cases a husband, by will, created a trust and provided for the payment to his widow from the income thereof of certain sums which she should take in lieu of her dower rights. In each case the widow elected to take under the will, and in each case she was held to be a purchaser for value of the annuity or yearly payments; and it was declared to be the law that until the capital invested in annuities shall have been returned, no income could be assessed or collected on the annuities.

Reversed and remanded, with direction to proceed in accordance with the views herein expressed.