## GILLESPIE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9883.

Circuit Court of Appeals, Ninth Circuit.

May 11, 1942.

Harold E. Rorschach, of Tulsa, Okl., Jack L. Rorschach, of Vinita, Okl., and Harold C. Harper, of Tulsa, Okl., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Morton K. Rothschild, and Frederick E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

As executor of the last will of Maud Gillespie, hereafter called the taxpayer, petitioner seeks reversal of a decision of the Board of Tax Appeals (43 B.T.A. 399) which determined that there was a deficiency of $549.76 in respect of the taxpayer's income tax for 1935.

At all times here pertinent the taxpayer, her husband (F. A. Gillespie) and their three sons owned all (10,000 shares) of the capital stock of F. A. Gillespie & Sons Company, an Oklahoma corporation. Five of the shares were owned and held by the taxpayer, five by her husband and five by each son. The remainder (9,975 shares) were held in trust by the husband—1,995 for himself, 1,995 for the taxpayer and 1,995 for each son. On May 15, 1929, the taxpayer and her husband made a contract with the corporation reading, in part, as follows: "The husband and wife [the taxpayer and her husband] do hereby sell, set over and assign, deed and convey, and agree to properly transfer to the corporation all of the real and personal property now standing in their names, or now held or owned jointly, severally, or as community property by them or either of them, [with specified exceptions]. In consideration thereof, the corporation agrees to pay to the husband and wife each, respectively, the sum of fifteen thousand ($15,000) dollars per year as long as they respectively live, and in addition thereto to pay to the

said wife, dividends in at least the sum of ten thousand ($10,000) dollars per year, and if for any reason funds are not available to be paid as dividends in the manner herein indicated, then in that event the corporation agrees to pay to the said Maud Gillespie herein called the wife, the sum of ten thousand ($10,000) dollars per year, it being the purpose and intention of this agreement that the corporation pay to the said Maud Gillespie in cash at least the sum of twenty-five thousand ($25,000) dollars per year hereafter."

At the time of the contract the property thereby transferred to the corporation had a fair market value of $1,464,240.22.[1] The taxpayer's interest in the property was a one-half interest. Thus her interest had, at the time of the contract, a fair market value of $732,120.11.

On November 16, 1933, the taxpayer wrote the corporation a letter stating that she realized that the corporation was not at that time financially able to continue the dividend payments provided for in the contract, and she, therefore, submitted to it the following proposition: "I agree to allow suspension of such dividend payments of $10,000 per year, to be resumed upon the [corporation] becoming financially able to resume payment, provided F. A. Gillespie will suspend a like amount from funds he now draws from the [corporation]; such suspended funds to be used for the development of the [corporation]. Provided further, that F. A. Gillespie pay to me one-half of the net refund on federal taxes received by him in December, 1932, * * * My agreement of suspension of dividend payments is contingent primarily upon receipt of this money from F. A. Gillespie. * * * This letter is not to be construed to imply that I am waiving my right for all time to future dividends and after three years, if I should so wish, I may demand these payments be continued as set out in the original contract."

Whether this proposition was accepted or not the record does not show. It does, however, show that no dividend payment was made to the taxpayer in 1935. It also shows that, in 1935, the taxpayer received from the corporation $17,666.25; that $15,-000 thereof was received under the contract; that the balance ($2,666.25) was not received under the contract, but was a loan by the corporation to the taxpayer; and that, in her income tax return for 1935, the taxpayer, in computing her gross income, did not include the $17,666.25 or any part thereof.

The Board held that the contract was an annuity contract, within the meaning of § 22(b) (2) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 670, which provides: "Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title[2] or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity."

The Board held that the contract was one to pay the taxpayer an annuity of $25,000 a year; that the consideration paid therefor was the amount ($327,562.50) for which she could have purchased an annuity of $25,-000 a year from a reputable life insurance company; that the entire amount ($17,666.-25) received by the taxpayer from the corporation in 1935 was received under the contract; that $9,826.88 thereof (3% of $327,562.50) should have been included in computing her gross income for 1935; and that her failure to include it resulted in a tax deficiency of $549.76.

Petitioner (the taxpayer's executor)[3] contends that the contract was not an annuity contract, but was merely a contract whereby the taxpayer and her husband transferred property to the corporation. Actually, it was a contract whereby the taxpayer and her husband transferred property to the corporation and, in consideration thereof, the corporation agreed (1)

---

[1] The property consisted of the following items, each having the fair market value indicated: Interest-bearing bonds, $1,172,000; a building in Tulsa, Oklahoma, $150,000; other real property, $22,512; cash and accounts receivable, $94,365.22; shares of corporate stock, $25,363.

[2] Title I (§§ 1–322) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, pages 1–755.

[3] After filing her petition to review the Board's decision, the taxpayer died, and her executor, Parmer A. Gillespie, was substituted as petitioner.

to pay each of them $15,000 a year for life and (2) to pay the taxpayer a dividend of $10,000 a year. We think that, in so far as it related to the payments of $15,000 each to the taxpayer and her husband, this was an annuity contract. Commissioner v. John C. Moore Corp., 2 Cir., 42 F.2d 186, 188; Continental Illinois Bank & Trust Co. v. Blair, 7 Cir., 45 F.2d 345, 346; Bodine v. Commissioner, 3 Cir., 103 F.2d 982, 984.

That the contract was not labeled "annuity contract" is immaterial. Bodine v. Commissioner, supra. Nor is it material that the consideration for the annuity granted by the contract was paid in property instead of cash.[4] Commissioner v. John C. Moore Corp., supra. It is likewise immaterial, if true, that the corporation was not authorized by law to make an annuity contract; for, whether authorized or not, such a contract was made and payments thereunder were received by the taxpayer. Whether the contract was valid or not we have no occasion now to inquire.

In support of his contention that the contract was not an annuity contract, petitioner cites Scott v. Commissioner, 7 Cir., 29 F.2d 472, involving a contract whereby a father conveyed property to his sons and, in consideration thereof, the sons agreed to pay the father $36,000 a year for life. The court treated this as an annuity and spoke of it as such. Thus, instead of supporting petitioner's contention, the Scott case has the opposite effect.

Other cases cited by petitioner (Mastin v. Commissioner, 8 Cir., 28 F.2d 748; Daniel Bros. Co. v. Commissioner, 5 Cir., 28 F.2d 761; Corbett Investment Co. v. Helvering, 64 App.D.C. 121, 75 F.2d 525; Klein v. Commissioner, 7 Cir., 84 F.2d 310; Citizens National Bank v. Commissioner, 8 Cir., 122 F.2d 1011) are readily distinguishable from the case at bar. No question as to the existence of an annuity contract was involved in the Mastin case, the Daniel case or the Klein case. In the Corbett case and in the Citizens National Bank case, the alleged annuitant, instead of transferring title to property, merely relinquished a right secured thereby or pertaining thereto.

Although we think that the contract here involved was, in part, an annuity contract, we do not agree with the Board that it was a contract to pay the taxpayer an annuity of $25,000 a year. It was, instead, a contract to pay her (1) an annuity of $15,000 a year and (2) a dividend of $10,000 a year. If the dividend was an annuity, which we doubt, the contract was one to pay the taxpayer two annuities, one of $15,000 a year and one of $10,000 a year; but it was not a contract to pay her a single annuity of $25,000 a year.

Whether the dividend was an annuity need not be decided; for, although $17,666.25 was received by the taxpayer from the corporation in 1935, only $15,000 thereof was received under the contract, and this was received under that part of the contract which provided for the payment of an annuity of $15,000 a year. The Board found that the balance ($2,666.25) was also received under the contract, but the finding is not supported by evidence. The evidence establishes, without conflict, that the $2,666.25 was not received under the contract, but was a loan by the corporation to the taxpayer.[5] For present purposes, therefore, that part of the contract which provided for the payment of a dividend (or an annuity) of $10,000 a year may be disregarded.

As stated before, the fair market value of the taxpayer's interest in the property which she and her husband transferred to the corporation was $732,120.11. The Board found, and the evidence supports the finding, that the transfer was intended by the taxpayer to be, and was, in part, a gift by her to the corporation. Therefore the Board held, and we agree, that the taxpayer should be deemed to have paid for any annuity which the contract granted her, not the full sum of $732,120.11, but only so much thereof as such annuity would have cost if purchased from an insurance company. Raymond v. Commissioner, 7 Cir., 114 F.2d 140, 142, 143.

At the time of the contract the taxpayer could have purchased an annuity from an insurance company for $13,102.50 per thousand dollars. Thus she could have purchased an annuity of $10,000 a year for $131,025; $15,000 a year for $196,537.50; $25,000 a year for $327,562.50. We conclude that the consideration paid for the annuity of $15,000 a year which the contract granted the taxpayer—the only an-

---

[4] Part of the consideration was paid in cash. See footnote 1.

[5] The taxpayer and the corporation's assistant secretary so testified, and their testimony is uncontradicted.

nuity here involved—was $196,537.50. It follows that, of the $17,666.25 which the taxpayer received from the corporation in 1935, $5,896.13 (3% of $196,537.50), and no more, should have been included in the taxpayer's gross income for 1935. Section 22(b) (2), supra.

The taxpayer, in effect, obtained from the corporation in 1929 an annuity of $15,000 a year in exchange for property worth $196,537.50. At the end of 1935, all amounts which the taxpayer had received in respect of the annuity, including the amount received by her in 1935, aggregated less than $196,537.50. The taxpayer, therefore, contended that no part of the amount received by her in 1935 was income or could, consistently with the Constitution be taxed as such, and that, in so far as it imposes such a tax, § 22(b) (2) of the Revenue Act of 1934 is unconstitutional. Petitioner makes the same contention.

The taxpayer was not, nor is petitioner, in a position to urge this contention; for, as applied here, § 22(b) (2) treats as income, not the entire amount received by the taxpayer in 1935, but only an amount ($5,896.13) equal to 3% of the aggregate consideration ($196,537.50) which she paid, in property, for the annuity; and there was no proof nor any attempt to prove that the property earned less than 3%. Raymond v. Commissioner, supra.

Decision reversed and case remanded with directions to enter a decision in conformity with this opinion.