### BEATTIE v. COMMISSIONER OF INTERNAL REVENUE.

No. 10309.

Circuit Court of Appeals, Sixth Circuit.

Feb. 5, 1947.

MILLER, Circuit Judge.

The petitioner, Elizabeth L. Beattie, seeks a review of an order of the Tax Court adjudging a deficiency of $284.06 in the petitioner's income tax for the calendar year 1941.

On January 1, 1927, Edward Burkett Miller and his wife, who is now Elizabeth L. Beattie, the petitioner herein, conveyed to Mount Union College of Alliance, Ohio, property having a net valuation of $265,-000, and in exchange therefor received a Survivorship Life Annuity Bond under which the College agreed to pay to Miller during his lifetime $1500 per month beginning February 1, 1927, and after his death to pay to the petitioner, if she survived him, $800 per month during her life. On that date Miller was 67 years of age and his wife was 45 years of age. Mount Union College was a corporation engaged in operating a college or institution of learning and generally performing any and all things necessary or incident to the conducting of the affairs of such a college.

From February 1, 1927 until September 23, 1933 the College paid to Miller, pursuant to the bond, a total of $121,500. On September 23, 1933, the College entered into a second agreement with Miller and his wife, which modified in part the previous agreement. Under this new agreement Miller and his wife conveyed their homestead property to the College, the College agreeing to cancel a mortgage thereon and to permit them to live therein free of rental. It also reduced the amounts which the College was required to pay under the annuity contract, providing that Miller should receive $7200 per year from November 1, 1933 until November 1, 1935, and thereafter $9600 per year during his life, and that his wife should receive, if she should survive her husband, $6000 per year payable in monthly installments. A new Survivorship Life Annuity Bond was issued by the College to that effect superseding the original annuity bond of January 1, 1927.

Following the issuance of the new annuity bond, the College made payments thereunder to Miller until his death on March 26, 1936, totaling $21,400. This

Charles F. Schnee, of Akron, Ohio, for petitioner.

Harry Baum, of Washington, D. C. (Sewall Key, A. F. Prescott and Hilbert P. Zarky, all of Washington, D. C., on the brief), for respondent.

Before HICKS, ALLEN and MILLER, Circuit Judges.

made a total of $142,900 paid to him under both annuity bonds. The petitioner subsequently remarried. After Miller's death the petitioner received from the College the monthly payments of $500, totaling $6000 during the taxable year 1941.

Mount Union College was one of a number of educational institutions which had adopted a plan of receiving conveyances of property in return for which the College issued survivorship life annuities. Most of the institutions calculated the annuity on a rate and basis of life expectancy so that not more than 30% of the amount received would be returned by the annuity payments and the remaining 70% of the original amount received would come to the institution as a gift. Although this principle was a general one among a number of institutions it was not compulsory and each institution had its own rules. On April 1, 1936, the John Hancock Insurance Company of Boston, regularly engaged in issuing life insurance and annuity contracts, would have charged $101,046 for a single premium "Life Annuity Without Refund", obligating it to pay $500 per month during the life of a female 54 years of age.

The taxpayer reported as income in her return for 1941 only $3975 out of the $6000 which she received. This amount was determined by computing 3% of one-half of $265,000, the original cost of the annuity contract. The Commissioner ruled that the entire $6000 was taxable income by computing the amount at 3% of the total cost of the annuity contract, limited, however, to $6000 actually received thereunder. She later filed a claim for a refund claiming an overpayment of $175.42, based upon the contention that only $2853.84 of the annuity payment of $6000 was taxable income. The basis for this contention was that the proper consideration for the annuity payments to her was the amount which she would have had to pay to any reliable life insurance company for an annuity contract paying her $500 per month for the remainder of her life, and that the difference between the total of such a premium plus what her husband had received during his life and the $265,000 actually transferred to the College was

a gift and not part of the consideration for her annuity. She fixed the amount of the single premium which she would have been required to pay to a reliable life insurance company at $95,128, being the amount of the premium regularly charged by another life insurance company for such an annuity contract, which, however, was not established in the record. She contended that 3% of this amount, namely $2853.84, was the limit of her taxable income from the annuity payments of $6000 in 1941.

The Tax Court ruled that the evidence did not justify a finding that 70 per cent of the property transferred to the College, or any particular part thereof, was considered as a gift; that the annuity contract of January 1, 1927 and its amendment of September 23, 1933 was not severable into two contracts comprising one annuity contract for Miller and a second annuity contract for the taxpayer, but was one contract for annuity payments to both of them; and that the taxpayer had not proved that the cost of this annuity contract was other than the amount of the property transferred to the College. It sustained the Commissioner's deficiency assessment and entered the order now under review.

Section 22(b) (2), Title 26 U.S.C.A. Int. Rev.Code, is the applicable law. It provides "* * * Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity * * *." If the consideration paid for the annuity in question is treated as the full $265,000, 3% of this amount was more than the $6000 received by the taxpayer and held by the Commissioner to be taxable income. The deficiency assessment was accordingly correct unless the taxpayer was justified in treating the consideration for the annuity either as one-half of the original $265,000

or the $95,128 which she would have had to pay to a life insurance company following her husband's death for such annuity contract as she held with the College.

■ The Tax Court's finding that the annuity contract was for tax purposes one contract in favor of both the husband and wife and was not two separate annuity contracts is a finding fully warranted by the record and also concurred in by us, and cannot be set aside on this review. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Helvering v. Meredith, 8 Cir., 140 F.2d 973. Its further finding that no particular part of the property transferred to the College was a gift is a finding of fact supported and warranted by the record and, accordingly no more reviewable in this proceeding than any other question of fact. Dobson v. Commissioner, supra. It is true that the annuity bond executed on January 1, 1927 refers to Miller in several places as the "Donor" and also recites that the principal sum of $265,000 "is an absolute gift to said Mount Union College, subject only to the payments aforementioned." But such a formal statement can not control the substance of the transaction for federal income tax purposes. No one can reasonably contend that Mr. and Mrs. Miller made an unconditional gift of $265,-000 to Mount Union College and that thereafter Mount Union College in an entirely separate transaction voluntarily promised to pay the annuity payments provided in the bond. Under such conditions, the bond would lack consideration and would be unenforceable. On the contrary, the College recognizes its liability under the bond. The application for the annuity bond states that the applicants "desiring to purchase a Life Income, do hereby apply * * * for a Mount Union College Survivorship Life Annuity Bond" stating the provisions thereof, and that they "hereby agree to pay ............ dollars ($........) to Mount Union College, when said Mount Union College shall deliver to me a Life Annuity Bond providing for the Income herein created." Attention is called to the phrase "purchase" of a Life Income and the agreement of the applicants "to pay" the stated amount upon delivery of the Bond. Accordingly, it seems clear that the annuity was purchased. Petitioner's contention that only part of the consideration was used for that purpose fails because the evidence does not show what part, if any, was treated by the parties as a gift. The evidence completely fails to show any allocation at that time between a single premium payment and a gift of the remainder. While such colleges had general rules which if applied would result in part of the consideration being received as a gift, yet such rules were not binding upon any institution and the evidence does not show that they were followed or applied in this particular case. In Gillespie v. Commissioner, 9 Cir., 128 F.2d 140, and in Raymond v. Commissioner, 7 Cir., 114 F.2d 140, the Court held that the amount to be allocated to the payment of the premiums could be determined by evidence of what premium life insurance companies would charge for such an annuity contract, and the remainder of the consideration would be treated as a gift. But in both of those cases the Tax Court first found that the transfer of the consideration was intended by the taxpayer to be, and was, in part a gift to the corporation. There is no such finding in this case, upon which such a rule of allocation could be based. Even assuming such a finding to have been made, there is still no evidence as to what premium would have been charged by a life insurance company for such an annuity contract on January 1, 1927 when the contract was made, or even on March 26, 1936 when petitioner's right to income payments matured. The evidence on that point was directed solely to April 1, 1936 and showed that such rates were new rates effective that day. Perhaps a legal principle calling for a different conclusion might have emerged from facts sufficiently proved to call for different findings by the Tax Court.

■ The Tax Court excluded from evidence Petitioner's Exhibit "2", being a pamphlet explaining Annuity Agreements of Charitable Organizations. It was published in 1929 and was not before the parties at the time of the contract on January 1, 1927. At best, it only substantiated previous testimony relative to the 70 percent—30 percent principle used by colleges gen-

erally and added nothing to what happened in this particular case. The ruling was not prejudicial error, even if considered erroneous.

The judgment of the Tax Court is accordingly affirmed.